IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICROSOFT CORPORATION,

    Plaintiff,

  v.

WEBXCHANGE, INC.,

    Defendant.

No. C 08-05149 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Microsoft Corporation filed this declaratory action against defendant WebXchange, Inc., who now moves for dismissal under FRCP 12(b)(1). Because no case or controversy exists between the parties, the motion is **GRANTED**.

## STATEMENT

This case is an effort to open a new front in a new district arising out of patent litigation already proceeding in another district. Microsoft publishes and licenses a software called Visual Studio, which allows users to create various programs and applications. Among these possible applications are "web service" applications that support interactions between computers over the internet. These web service applications include applications that allow real-time transactions on the internet using the Simple Object Access Protocol ("SOAP"). Microsoft encouraged developers to use Visual Studio to create these kinds of programs, and

posted examples and suggestions on its website for this purpose as well as to market the abilities of its software (Compl. ¶ 18). These "case studies" included explanations of software applications created by Dell, Inc., FedEx Corporation, and AllState Insurance Company, who are now the defendants in various Delaware patent-infringement suits initiated by WebXchange.

WebXchange owns various patents related to real-time transactions on the internet. It brought suit in Delaware against a handful of developers who created web service applications, which WebXchange asserts violate its patents. Each of these developers used Microsoft's Visual Studio software to create these allegedly infringing applications. In its claims against the developers, WebXchange has used the Microsoft materials to map its infringement contentions, and these developers have asked Microsoft to defend and indemnify them in the Delaware suits. WebXchange has never threatened Microsoft with an assertion that its Visual Studio software infringes WebXchange's patents, but has stated herein that should this action continue, it will have to bring a counterclaim for indirect patent infringement against Microsoft. WebXchange has disavowed any intent to bring an inducement of infringement claim based on any case studies Microsoft has created up to this point.

**ANALYSIS**

The central issue in determining whether there is subject-matter jurisdiction in this case is whether there exists an actual case or controversy on which to base the declaratory judgment action. Under the Declaratory Judgment Act:

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a).

The parties agree that the proper standard for determining whether a case or controversy exists is whether the facts alleged, under all circumstances, show that there is a substantial actual controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a declaratory judgment.

Significantly, both parties agree that Microsoft's Visual Studio software itself does not infringe the WebXchange patents. Instead, Microsoft argues that there is an actual controversy as to whether it is liable for inducement of infringement by others. It bases this argument on four main points. *First*, Microsoft argues that WebXchange's actions in basing its Delaware infringement claims on Microsoft's "case studies" shows that there is a substantial controversy that Microsoft possibly induced its customers to infringe. *Second*, Microsoft argues that WebXchange is prepared to bring a compulsory counterclaim against Microsoft for induced infringement should this action go forward. *Third*, Microsoft claims that the Delaware defendants' requests for defense and indemnity from Microsoft confirm the actual and immediate controversy. *Fourth*, Microsoft argues that its actions in encouraging developers to use Visual Studio to create software that facilitates real time transactions on the internet creates a case or controversy. In addition to these facts, Microsoft argues that subject-matter jurisdiction is proper due to practical considerations and its assertion of unenforceability and invalidity claims.

To be liable for inducement of infringement, it must be shown "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (citations omitted). Assessing the record in the light most favorable to Microsoft, this order finds that the record fails to show an actual controversy as to whether or not Microsoft actively and intentionally encouraged its customers to infringe WebXchange's patents.

From the outset, WebXchange has conceded that it does not have any facts or evidence supporting an inducement claim. It also has stipulated to covenant not to sue Microsoft for any of its case studies made up to this point. During oral argument, WebXchange's attorney stated that "I am prepared to state categorically that the facts as we presently know them, there is no basis for us to assert inducement against Microsoft. . . . We have no evidence; we have nothing in our possession and WebXchange's knowledge that there is anything — that there are any facts on behalf that Microsoft is doing that they actively engaged inducement (Tr. 5)." Counsel further agreed that "Web Exchange [sic] will covenant not to sue Microsoft for inducement

3

1    based on the case studies. And it will agree not to base any claim for inducement on the use of
2    the case studies. . . . [It] will covenant not to rely on the case studies in any case of inducement
3    against Microsoft (Tr. 9)." Thus, any argument by Microsoft that its "case studies" provide the
4    basis for a case or controversy misses the mark. Aside from the covenant not to sue, the case
5    studies are merely public explanations of what each of the Delaware defendants has done using
6    the Visual Studio software, which is why WebXchange has used these "case studies" in its
7    actions against those Delaware defendants. The mere fact that WebXchange quoted from the
8    case studies to highlight what they believe are the infringing aspects of the developed software
9    does not in and of itself show any intent to induce infringement on the part of Microsoft.
10   Remember, again: all concede that the Microsoft software itself infringes no WebXchange
11   patents, WebXchange has admitted to having no evidence supporting an inducement claim, and
12   WebXchange has agreed to never use these studies in an inducement action against Microsoft.

13       WebXchange's statement that it would have to bring a compulsory counterclaim should
14   this action go forward also fails to satisfy the case or controversy requirement. At this point,
15   Microsoft has not alleged any facts that justify an inducement action. Had this order found facts
16   sufficient to hold otherwise, WebXchange's position obviously would have to be modified, and
17   it would have been forced by the compulsory counterclaim rule to counterclaim. Since,
18   however, this order finds that no facts presented by Microsoft create a case or controversy, it
19   merely reaffirms WebXchange's belief that no facts exist to bring any infringement against
20   Microsoft. Microsoft is using counterfeit logic to manufacture a controversy where none exists.

21       Next, it is true that Microsoft encourages developers to create web services that use
22   SOAP. That, however, does not create a case or controversy, even for induced infringement.
23   This marketing material found on Microsoft's website does not establish a prima facie case of
24   induced infringement as it does not show an intent to induce developers to infringe on
25   WebXchange's patents. WebXchange does not own a patent on all web services that use
26   SOAP. This is conceded.

27       The 2005 email is too thin and abbreviated to support any plausible notion that
28   Microsoft faces an imperiled future. That email called for nothing more than a ten-minute

4

1   meeting to possibly sell Microsoft the patents in question.  The description of the patents was
2   less than ten words long.  No threat of any kind was made.  The email was more than three
3   years ago.  No threats have followed.  At most, the ten-word description — "control over any
4   real-time transaction on the net" — was puffery posing no plausible threat to Microsoft.

5       Judicial economy and practical considerations are also irrelevant to the finding of a case
6   or controversy.  As Microsoft admits in its opposition brief, judicial economy only prevents
7   dismissal when there is an actual case or controversy.  In this regard, Microsoft's argument that
8   it is exposed to massive economic damages through its indemnity agreements fails to show how
9   resolution in this forum would provide a remedy that the Delaware actions do not.  Surely, there
10  are thousands of Microsoft Visual Studio users in the United States, yet WebXchange has only
11  filed infringement claims against three.  This leads to the inference that the issue is not that any
12  and all Visual Studio uses infringe WebXchange's patents.  Rather, the inference is that it is
13  being used in a specific way by those customers to allegedly infringe.  That issue is being
14  properly adjudicated before the Honorable Judge Joseph J. Farnan, Jr., in the District Court of
15  Delaware.  Those Delaware actions are well along the road to resolution, and it would be
16  imprudent for this Court to usurp the disposition of that issue from Judge Farnan.  Microsoft has
17  represented that those customers in the Delaware action have requested indemnity and tendered
18  their defense to Microsoft.  Any remedy Microsoft could seek in this action could be pursued in
19  Delaware if Microsoft were to take over the defense of those customers.  The indemnity
20  agreements fail to establish a case or controversy in and of themselves.  This same logic applies
21  to any practical considerations that would make this Court a more convenient forum.

22      Finally, Microsoft's assertion of unenforceability and invalidity claims are similarly
23  irrelevant, as the declaratory action must be related to charges of infringement.  *Foster v. Hallco*
24  *Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir. 1991).  As there is no case or controversy as to
25  infringement, dismissal of the declaratory action is proper.

## CONCLUSION

27  For the foregoing reasons, WebXchange's motion to dismiss is **GRANTED**, as there is no
28  case or controversy to establish subject-matter jurisdiction.  Plaintiff may file a motion

5

1  requesting leave to amend its claims within **FOURTEEN CALENDAR DAYS** of the date of entry of
2  this order, which is March 3, 2009.  Any such motion should be accompanied by a proposed
3  pleading and the motion should explain why the foregoing problems are overcome by the
4  proposed pleading.  Plaintiff must plead its best case.  Failing such a motion, all of plaintiff's
5  claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  February 17, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

6